IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KRISTA CRAIG MORGAN                                              PLAINTIFF

V.                                        NO. 15-3077

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Krista Craig Morgan, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner), denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background**:

Plaintiff protectively filed her current application for DIB on July 9, 2012, alleging an inability to work since January 1, 2011,[1] due to bipolar disorder, fibromyalgia, chronic migraines, and severe neck/back pain associated with fibromyalgia. (Doc. 13, pp. 125-127, 150, 153). An administrative hearing was held on November 20, 2013, at which Plaintiff appeared with counsel and testified. (Doc. 13, pp. 30-52).

By written decision dated April 15, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – degenerative joint disease of the cervical and lumbar spine, fibromyalgia, bipolar disorder,

---

[1] Plaintiff amended her onset date to June 16, 2012, at the hearing held before the ALJ. (Doc. 13, p. 35).

1

and anxiety disorder. (Doc. 13, p. 16). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 13, p. 17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except she can only frequently balance, kneel, and crawl and only occasionally climb, stoop, and crouch. The claimant can perform simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed, and she can work under supervision that is simple, direct, and concrete.

(Doc. 13, p. 18). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform her past relevant work, but there were other jobs Plaintiff would be able to perform, such as poultry production worker, price maker, and hotel or motel housekeeper. (Doc. 13, pp. 24-25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 29, 2015. (Doc. 13, pp. 5-7). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a

reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the

3

impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520   Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.   See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R.§ 404.1520, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R.§ 404.1520.

### III.   Discussion:

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in failing to follow the treating physician rule; 2) Whether the ALJ erred in his RFC determination; and 3) Whether the ALJ erred in his determination of severe impairments. (Doc. 10).

#### A.   Severe Impairments:

Plaintiff argues that the ALJ erred because he failed to find that Plaintiff's migraine headaches were severe. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 1520(a)(4)ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § 404.1521.  The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen**,** 870 F.2d 1392, 1395 (8th Cir. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet …it is also not a toothless standard.'" Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015)(quoting Kirby v. Astrue, 500 F.l3d 705, 708 (8th Cir. 2007)).

4

Plaintiff relies upon the "Headaches Medical Source Statement," a check-box form, dated August 23, 2013, completed by one of her treating physicians, Dr. Richard Chitsey, in support of her position. (Doc. 13, pp. 389-390). According to the medical records, Dr. Chitsey began treating Plaintiff on February 5, 2013. (Doc. 13, p. 367). Therefore, at the time of the completion of the form, he had been treating Plaintiff for approximately six months, rather than the two years Dr. Chitsey referenced in his October 10, 2013 letter. (Doc. 13, p. 387). On February 5, 2013, Plaintiff reported to Dr. Chitsey that she was generally able to do usual activities. (Doc. 13, p. 368). She was then assessed with: other iatrogenic hypothyroidism; screening breast; fibromyalgia; other and unspecified bipolar disorders; hyperlipidemia; and dyspnea and respiratory abnormalities. (Doc. 13, p. 368). Plaintiff next saw Dr. Chitsey on March 7, 2013, complaining of no energy . (Doc. 13, p. 370). She was assessed with weakness and fatigue and hypothyroidism. (Doc. 13, p. 371). On April 16, 2013, Dr. Chitsey diagnosed Plaintiff with "Other iatrogenic hypothyroidism," and advised her to continue taking synthroid. (Doc. 13, p. 376).

Plaintiff next saw Dr. Chitsey on July 8, 2013, complaining of neck pain and headaches, and was reported as generally being able to do usual activities. (Doc. 13, p. 377). She was assessed with other iatrogenic hypothyroidism and degenerative disc disease. (Doc. 13, p. 378). Plaintiff again saw Dr. Chitsey on July 22, 2013, after falling, complaining of a large knot on her right lower leg. (Doc. 13, p. 380). Dr. Chitsey assessed her with contusion of her lower leg. (Doc. 13, p. 381).

On August 23, 2012, Dr. Chitsey completed a Medical Assessment of Ability to Perform Work-Related Activities (Physical) (Doc. 13, p. 388); Headaches Medical Source Statement (Doc. 13, p. 389); and a Mental Medical Source Statement (Doc. 13, p. 391). In all

of the documents, he found Plaintiff to be very limited in her abilities. The next record from Dr. Chitsey is dated October 10, 2013, where he referred Plaintiff to Dr. Steven Moon for her chronic tension type headaches. (Doc. 13, p. 384). Dr. Chitsey also wrote a letter dated October 10, 2013, wherein he indicated that he had taken care of Plaintiff for a couple of years, that she had multiple medical conditions, including bipolar disorder, chronic daily headaches, and fibromyalgia, and that any one of those ailments were individually disabling to her, and the combination made it completely impossible to work. (Doc. 13, p. 387). He opined that Plaintiff was subsequently unemployable. (Doc. 13, p. 387).

Although Plaintiff testified at the hearing that she saw Dr. Moon the previous week, and that he recommended she receive Botox injections for her headaches, no medical records from Dr. Moon have been submitted by Plaintiff.

The Court believes that the medical evidence fails to support Plaintiff's claims of debilitating migraine headaches. It was consistently reported that she was able to do usual activities, and an ALJ need not give weight to a conclusory check-box form unsupported by medical evidence. See Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000).

In addition, where the ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, as the ALJ did in this case, any error in failing to identify a particular impairment as "severe" at step two is harmless. Swartz v. Barnhart, 188 Fed. Appx. 361, 388 (6th Cir. 2006); Elmore v. Astrue, 2012 WL 1085487 at *12 (E.D. Mo. Mar. 5, 2012).

Accordingly, the Court finds there is substantial evidence to support the ALJ's severe impairment determination.

**B.    Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, after considering the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Doc. 13, p. 19). The ALJ then discussed Plaintiff's longitudinal medical history, concluding that it failed to provide strong support for her allegations of disabling symptoms and limitations. (Doc. 13, p. 19). He noted that prior to the amended alleged onset date, Plaintiff received treatment for fibromyalgia, neck and back pain, multiple joint pain, migraine headaches, bipolar disorder, and anxiety disorder with panic attacks. (Doc. 13, pp. 19-20). He discussed the cervical spine x-rays taken in early February 2012, which revealed multilevel degenerative joint disease with associated mild disc space narrowing and foraminal stenosis, and the lumbar spine x-rays, which showed mild degenerative joint disease with associated mild disc space narrowing as well as mild degenerative changes at the sacroiliac joints. (Doc. 13, p. 20). The ALJ discussed the records

from another treating physician, Dr. Jyothie R. Mallepalli, as well as Dr. Chitsey. (Doc. 13, pp. 20-21). He noted the fact that several of Dr. Chitsey's examinations did not demonstrate any abnormal findings. (Doc. 13, p. 20).

In addition, the ALJ noted that Plaintiff received unemployment benefits during the third quarter of 2013, which he found detracted from the credibility of her allegations of disabling symptoms and limitations. (Doc. 13, p. 23).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination and Weight Given to Treating Physician:

Plaintiff argues that the ALJ ignored the weight of the medical evidence that the mental and physical impairments, when taken together, rendered her unable to maintain any work, that the ALJ completely ignored the evidence that Plaintiff suffered from chronic migraines, and that her treating physician found she would be incapable of even low-stress work, and that the ALJ failed to give proper weight to the opinions of her treating physicians.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported

8

by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013)).

With respect to the weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014)). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

In a Disability Determination Explanation, dated November 13, 2012, Dr. Winston Brown completed a Psychiatric Review Technique report and Mental RFC Assessment, noting that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace; and no episodes of decompensation. Dr. Brown also concluded that Plaintiff was moderately limited

in her ability to understand and remember detailed instructions, had sustained concentration and persistence limitations, and had no marked limitations, and that Plaintiff would be able to perform unskilled work. (Doc. 13, pp. 58- 63). A Physical RFC Assessment was completed by Dr. Charles Friedman on October 26, 2012, in which Dr. Friedman found Plaintiff would be able to perform light work with certain postural limitations. (Doc. 13, p. 60).

In another Disability Determination Explanation, dated April 17, 2013, a Psychiatric Review Technique report and Mental RFC Assessment, completed by Dr. Kay Cogbill, were included, and she found Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Doc. 13, p. 74, 77, 79). She concluded that Plaintiff would be able to perform unskilled work. Dr. Jonathan Norcross also completed a Physical RFC Assessment, finding Plaintiff would be able to perform light work with certain postural limitations. (Doc. 13, p. 75).

In his Mental Evaluation, Dr. Efird noted that the ability to perform basic self-care tasks independently was endorsed as present "some days," and that Plaintiff also reported difficulty with motivation and procrastination at other times. (Doc. 13, p. 333). Dr. Efird reported that Plaintiff's mood was generally normal, and no remarkable indications of acute emotional distress were noted. (Doc. 13, pp. 333-334). Dr. Efird diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Bipolar I disorder, most recent episode depressed; generalized anxiety disorder |
| Axis II: | Deferred |
| Axis V. | 45-55 |

(Doc. 13, p. 335). Dr. Efird concluded that Plaintiff communicated and interacted in a reasonably socially adequate manner; communicated in a reasonably intelligible and effective

10

manner; and had the capacity to perform basic cognitive tasks required for basic work like activities (however, qualitative indications of cognitive inefficiency were also noted during the evaluation). (Doc. 13, p. 335). Dr. Efird also concluded that Plaintiff appeared able to track and respond adequately for the purposes of the evaluation and that symptoms of bipolar disorder would likely impair attention/concentration sporadically. (Doc. 13, p. 335). Dr. Efird noted that Plaintiff generally completed most tasks during the evaluation, and there were no remarkable problems with persistence during the evaluation. (Doc. 13, p. 335). He also opined that with the symptoms of bipolar disorder, problems consistently sustaining persistence over longer time frames were considered reasonably probable, and that Plaintiff would also most likely have difficulty with stress tolerance. (Doc. 13, p. 335). Finally, Dr. Efird reported that Plaintiff appeared capable of performing basic work like tasks within a reasonable time frame. (Doc. 13, p. 335).

In this case, the ALJ gave very little weight to Dr. Chitsey's August 2013 opinions. (Doc. 13, p. 22). He concluded that Dr. Chitsey's treatment notes reflected minimal complaints from Plaintiff, as well as generally normal examination findings. (Doc. 13, p. 22). The ALJ did not give significant weight to Dr. Efird's assessed GAF score, which was 45-55, but considered the score in evaluating the severity of Plaintiff's mental impairments throughout the relevant period. (Doc. 13, p. 23).

The ALJ concluded that Plaintiff retained the ability to perform the activity within the limitations set forth in the RFC, "as supported in part by the opinion evidence of Dr. Efird and the State agency's medical and psychological consultants." (Doc. 13, p. 23).

11

The ALJ gave great weight to the state agency's medical consultants, due to their consistency with the other evidence included in the record and discussed in his opinion. (Doc. 13, p. 23).

Plaintiff argues that the ALJ did not give weight to Dr. Alfredo Torres, a mental health provider. However, as noted by Defendant, Dr. Torres treated Plaintiff prior to the relevant time period. Nevertheless, it is noteworthy that at Plaintiff's last visit to Dr. Torres on February 10, 2012, Dr. Torres reported Plaintiff did not meet the criteria for inpatient treatment. (Doc. 13, p. 226).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the various opinions of the physicians.

### D.   Hypothetical Question to VE:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform the jobs of poultry production worker, price marker, and hotel or motel housekeeper.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV.   Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision

is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

        IT IS SO ORDERED this 17th day of November, 2016.

        */s/ Erin L. Setser*
        HON. ERIN L. SETSER
        UNITED STATES MAGISTRATE JUDGE